# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3264

_____

In re: Stratasys Ltd. Shareholder Securities Litigation

------------------------------

Albert Smelko, Jr., Individually and on Behalf of All Others Similarly Situated

*Plaintiff*

Macomb County Employees Retirement System; Mineworkers' Pension Scheme

*Plaintiffs - Appellants*

v.

Stratasys Ltd.; David Reis; Erez Simha; Bre Pettis; Jennifer Lawton

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 9, 2017
Filed: July 25, 2017

_____

Before LOKEN, MURPHY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Stratasys manufactures 3D printers, primarily for commercial use. Some of its shareholders brought a securities fraud action, claiming several promotional statements were knowingly false. The district court[1] determined that these statements were mere puffery and that the shareholders failed to sufficiently plead that Stratasys knew its statements were false when made. *In re Stratasys Ltd.*, 2016 WL 3636992 (D. Minn. June 30, 2016) Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In August 2013, Stratasys acquired MakerBot Industries, LLC—a manufacturer of scaled-down desktop 3D printers—as an indirect, wholly owned subsidiary. According to Stratasys, this acquisition would allow it to expand into the emerging desktop 3D printer market.

In January 2014, MakerBot introduced a new line of desktop 3D printers. called "5G printers." Each 5G printer had a "Smart Extruder" replaceable print head, which was designed to be swappable. Stratasys claimed these printers were "unmatched" in quality, reliability, ease of use, speed, and performance. They also made positive statements about MakerBot's past and future finances.

Buyers of the 5G printers experienced significant issues with clogging due to the Smart Extruders. Sales for the 5G printers declined; many were returned. Stratasys stock dropped, prompting this securities fraud action.

The shareholders claim both the quality and financial statements were misleading, and that Stratasys knew the 5G printers were essentially inoperable but

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

still rushed them to market while publicly proclaiming their quality and reliability. The district court found that most of statements about the printers' quality were "mere puffery," that any verifiable statements about speed were not adequately pled to be false, and that the shareholders failed to plead a strong inference of scienter. The shareholders appeal.

## II.

This court reviews de novo the dismissal of a complaint for failure to state a claim. *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 661 (8th Cir. 2001). The Private Securities Litigation Reform Act ("PSLRA") imposes heightened pleading standards in securities-fraud cases. *Id.* at 656. This court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute." *Id.* at 660.

## A.

A securities fraud "plaintiff must show that the defendant made a statement that was misleading as to a material fact." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (internal quotation marks and emphases omitted). A fact is material "when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Id.* (internal quotation marks omitted). An adequate complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." **15 U.S.C. § 78u-4(b)(1)**.

A statement is not material and is mere puffery, if it is "so vague and such obvious hyperbole that no reasonable investor would rely upon [it]." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997). No reasonable investor

would rely on "soft, puffing statements"—which encompass "optimistic rhetoric" and "promotional phrase[s] used to champion the company but [ ] devoid of any substantive information." *Id.* (internal quotation marks omitted). *See also **In re Medtronic Inc., Sec. Litig.***, 618 F. Supp. 2d 1016, 1021, 1030 (D. Minn. 2009) (company said product was "durable and reliable" and "designed to 'resist fracture'"), *aff'd sub nom **Detroit Gen. Ret. Sys. v. Medtronic, Inc.***, 621 F.3d 800, 808 (8th Cir. 2010) (statements were "so vague that an investor could not reasonably rely on them for any information related to the soundness of the investment"). Optimistic statements are not actionable if they cannot be "supported by objective data or [ ] otherwise subject to verification by proof." *See **In re NVE Corp. Sec. Litig.***, 551 F. Supp. 2d 871, 894-95 (D. Minn. 2007) (internal quotation marks omitted) (statements that technology was "something that comes around 'once in [a] lifetime'" and that company was "'leading the race' to develop" the technology were mere puffery) (alteration in original), *aff'd*, 527 F.3d 749 (8th Cir. 2008).

The statements the shareholders here claim are materially misleading are "so vague and such obvious hyperbole that no reasonable investor would rely upon them." *Parnes*, 122 F.3d at 547. Stratasys's statements that the 5G printers offer "unmatched speed, reliability, quality and connectivity" are vague and nonverifiable. As the district court noted, even to the extent the claim of "unmatched speed" could be actionable, the shareholders "do not allege any facts demonstrating that the 5G printers are not faster than MakerBot's other printers or other desktop 3D printers on the market." *Cf. **Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund***, 135 S. Ct. 1318, 1326 (2015) (a "determinate, verifiable statement" is not puffery).

The shareholders argue that the context of Stratasys's claims—a highly anticipated product launch following Stratasys's acquisition of MakerBot—makes them material. The out-of-circuit authority cited by the shareholders is distinguishable. *See **In re Harman Int'l Indus., Inc. Sec. Litig**.*, 791 F.3d 90, 109

(D.C. Cir. 2015) (statement that sales "were very strong during fiscal 2007" were plausibly understood—in the context of an annual report—to be "a description of historical fact rather than unbridled corporate optimism"); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597 (7th Cir. 2006) (statement that company was "still seeing that product continue to maintain its growth rate," made in "direct response to an analyst's inquiry about a possible decline in" sales, was not puffery) (emphasis omitted), *vacated on other grounds*, 551 U.S. 308 (2007). Here, though the shareholders allege that some misleading statements were made in the context of Stratasys's SEC filings, the specific statements they identify are still vague and indeterminate rather than plausibly understood as "a description of historical fact." *See In re Harman*, 791 F.3d at 109. Nor do the shareholders allege the statements were made in direct response to an inquiry based on inconsistent information. *See Makor*, 437 F.3d at 597.

The shareholders also cite *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991). There, the bank's board said the reason for a merger was "to achieve a 'high' value, which [directors] elsewhere described as a 'fair' price." *Id.* at 1088. The Supreme Court, noting that "conclusory terms in a commercial context are reasonably understood to rest on a factual basis," held that this statement was not insulated from liability because it was a "statement[ ] of reasons or belief" or because it "did not express a reason in dollars and cents." *Id.* at 1092-93. That holding does not preclude statements, like the ones here, from being "so vague and such obvious hyperbole that no reasonable investor would rely upon them." *Parnes*, 122 F.3d at 547.

B.

"[A] securities fraud case cannot survive unless its allegations collectively add up to a strong inference of the required state of mind." *Green Tree*, 270 F.3d at 660. The material misstatement must be false when made, not just in hindsight. *See In re*

-5-

***K-tel Int'l, Inc. Sec. Litig.***, 300 F.3d 881, 891 (8th Cir. 2002) ("Under the Reform Act the complaint must allege facts or further particularities that, if true, demonstrate that the defendants had access to, or knowledge of, information contradicting their public statements when they were made." (internal quotation marks omitted)). The PSLRA requires particularity in pleading contemporaneous knowledge of falsity; it does not allow "pleading fraud by hindsight." ***Elam v. Neidorff***, 544 F.3d 921, 927 (8th Cir. 2008) (internal quotation marks omitted).

Here, the shareholders' claims fail because their allegations do not adequately tie Stratasys's knowledge of the product quality issues or their financial repercussions to the timing of the statements. The shareholders' allegations about Stratasys's knowledge of the 5G printers' issues, from confidential witness accounts, do not provide particular details about *when* Stratasys knew of these issues. The shareholders argue the district court erred in considering their confidential witness accounts when evaluating scienter because those accounts were meant to demonstrate only that the statements were materially false. However, adequately pled scienter must demonstrate that a defendant knew a statement was false at the moment it was made. Without tying the timing of the knowledge to the allegedly misleading statements, the shareholders do not plead facts sufficient to support a strong inference of scienter. *See **In re K-tel***, 300 F.3d at 891.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-6-